1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12

JOSEPHINE SMITH, an individual, et al.,

Case No.: 5:11-cv-03999-LHK

13

Plaintiffs,

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTIONS FOR PARTIAL SUMMARY
JUDGMENT

v.

14

CITY OF SANTA CLARA, a public entity, et al.

15

Defendants.

16

17      Plaintiffs Josephine Smith and A.S., a minor appearing through her guardian ad litem, bring

18  this action seeking damages against the City of Santa Clara, the City of Santa Clara Police

19  Department, Detective Kenneth Henderson, Sergeant Greg Hill, and Clay Rojas pursuant to 42

20  U.S.C. § 1983, California Civil Code §§ 52.1-3, and several state common law causes of action.

21  Plaintiff[1] alleges that her home was unreasonably, and therefore unlawfully, searched.  Plaintiff

22  also alleges that she was unreasonably, and therefore unlawfully, detained and arrested in violation

23  of her Fourth Amendment rights.  Additionally, Plaintiff alleges that excessive force was used in

24  the course of the unlawful detention, and that the detention and associated force constituted

25  retaliation for her exercise of her First Amendment rights.  Finally, Plaintiff alleges that the

26

27  [1] Though both Josephine Smith and A.S. are named as Plaintiffs in this matter, the claims relate
    primarily to Josephine Smith.  Accordingly, for the sake of simplicity, the Court will refer to
28  Josephine Smith as "Plaintiff" in this Order, although A.S. remains a Plaintiff as well.

1

United States District Court
For the Northern District of California

1    conduct of the officers who searched her home constituted assault, battery, negligence, and

2    negligent and intentional infliction of emotional distress.

3        Defendants City of Santa Clara ("the City"), City of Santa Clara Police Department ("the

4    Police Department"), Detective Kenneth Henderson ("Detective Henderson"), and Sergeant Greg

5    Hill ("Sergeant Hill")[2] now move for partial summary judgment on Plaintiffs' § 1983 claims for

6    invasion of privacy, false arrest, illegal search, and First Amendment retaliation, and Plaintiffs'

7    state law claims to the extent that they are based on improper detention and search.  ECF No. 54.

8    Defendant Henderson moves for summary judgment on all claims.  Sergeant Hill, the City, and the

9    Police Department do not move for summary judgment on the excessive force claim or excessive

10   force-related elements of the state law claims.  Defendant Clay Rojas  ("Defendant Rojas") has

11   moved separately for summary judgment by filing a joinder in the other Defendants' motion, along

12   with a separate brief.  ECF No. 64.  Plaintiff filed oppositions to both motions, ECF Nos. 68-69.

13   The original group of Defendants filed a Reply, ECF No. 80, in which Defendant Rojas filed a

14   joinder.  ECF No. 84.  Defendant Rojas also filed a separate reply.  ECF No. 83.[3]  The Court will

15   address the first Defendants' motion first, and will address Defendant Rojas's motion separately in

16   this Order.

17       Pursuant to Civil Local Rule 7-1(b), the Court deemed both Defendants' motions suitable

18   for decision without oral argument and vacated the December 13, 2012 hearing on these motions.

19   ECF No.  85.  Having considered the parties' submissions and arguments as well as the relevant

20   law, the Court GRANTS in part and DENIES in part all Defendants' motions for partial summary

21   judgment.

22   **I.        BACKGROUND**

23

24   [2] In this Order, the Court will refer to the City, the Police Department, Detective Henderson, and
     Sergeant Hill collectively as "Defendants," because these four defendants together brought one
25   motion.  Clay Rojas is also a Defendant, but brought a separate motion for summary judgment.
     Accordingly, the Court will refer to him as "Defendant Rojas."  When the Court intends to refer to
26   all of the defendants in this case including Rojas, the Court will so indicate.
     [3] Plaintiff also submitted separate evidentiary objections.  ECF No. 70.  However, Civil Local Rule
27   7-3 requires that "[a]ny evidentiary and procedural objections to the motion must be contained
     within the brief or memorandum."  Accordingly, the Court disregards Plaintiff's separately filed
28   objections.

Case No.: 5:11-CV-03999-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR PARTIAL
SUMMARY JUDGMENT

On October 7, 2010, Vahid Zarei was stabbed while attempting to retrieve his car, which had been stolen. *See* Decl. of Daniel Burde at ¶ 6. Zarei could not identify his attacker, but recognized the woman who was with the attacker, and who drove the car away from the scene, as an acquaintance named Justine. *Id.* at ¶ 5; Decl. of Tyson Shearer ("Shearer Decl.") at ¶ 9. A witness identified a photograph of Justine Smith (hereinafter, "Justine"), pulled from a police mug shot database, as the woman who had been with the attacker. Shearer Decl. at ¶ 10.

Detective Michael Carlton (not a defendant here), one of the officers dispatched to respond to the stabbing incident, discovered that Justine was on active probation. *See* Carlton Depo. at 95;5-7. Detective Carlton obtained a DMV printout listing Justine's address as 942 Gale Drive in Campbell, California. Exh. I to Decl. of Michael C. Serverian in support of Defendants' Partial Motion for Summary Judgment ("Serverian Decl."); Carlton Depo. at 103:5-8. Detective Carlton then called the probation department, Carlton Depo. at 93:4-94:22, who sent via fax several documents listing Justine's address as 940 Gale Drive in Campbell. Exh. H to the Serverian Decl.; Carlton Depo. at 105:3-5. Those documents included:

- An undated probation department "Assessment" form, apparently completed by Justine herself, listing Justine's address as 940 Gale Drive, with the notation "just moving back. Before I lived there for 10 years." Exh. H to Serverian Decl.

- A probation report dated June 2, 2010, apparently filled out by Justine herself, listing her address as 940 Gale Drive, and the notation "in process of moving out of mother's house." *Id.*

- A partial probation report dated December 22, 2009, listing 940 Gale Drive as Justine's address. The report also indicates that Josephine Smith and A.S. reside at 940 Gale Drive with Justine. *Id.*

- A "Probation Field Sheet" dated October 7, 2010, listing Justine's address as 940 Gale Drive, and listing Josephine Smith and A.S. as "Others in Home." *Id.*

Case No.: 5:11-CV-03999-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Defendant Rojas, then an officer on the Special Enforcement Team tasked with conducting the probation search, separately obtained information about Justine from the County's database of arrestees.  The documents obtained by Defendant Rojas included:

- The same DMV information originally obtained by Detective Carlton, listing Justine's address from February 22, 2009 through December 30, 2009 as 942 Gale Drive, and from January 27, 2010 through May 14, 2010 as 940 Gale Drive.  Exh. I to Serverian Decl.

- A Santa Clara County "Arrest and Disposition History" for Justine dated October 7, 2010, identified by Sergeant Hill as a "CJIC Printout," (for "Criminal Justice Information Control"), which notes that Justine was on probation with a search condition, but does not list an address.  Exh. J to Serverian Decl.

- A second CJIC printout entitled "Query Probation Grant," which again notes that Justine was on probation, with a search condition, scheduled to terminate on October 9, 2012, and not listing any address.  Exh. K to Serverian Decl.

- A third CJIC printout entitled "List emergency contacts," identifying "Josie Smith" as the emergency contact for Justine.  The address listed for Josie Smith is 942 Gale Drive as of 12/5/2001, and no address is listed as of 3/31/2009.  Exh. L to Serverian Decl.

- A fourth CJIC printout entitled "Query person detail," listing Justine's address as 940 Gale Drive.  Exh. M to Serverian Decl.

940 and 942 Gale Drive comprise a duplex owned by Plaintiff Josephine Smith ("the duplex").  *See* Decl. of Josephine Smith in support of Plaintiffs' opposition to Defendants' motion for partial summary judgment ("Smith Decl.") at ¶ 2.  On the basis of the information detailed above that had been collected by Detective Carlton and Officer Rojas, the police determined that Justine resided at that duplex, and that the duplex would be the appropriate place to search for her.  Two officers, Detective Henderson and Detective Shimada (not a defendant here), were assigned to conduct surveillance of the duplex.  Henderson Depo. at 30:6-17; 39:14-16.  They watched the duplex from approximately 10:00 a.m. until approximately 3:00 p.m., but did not see Justine or anyone fitting the description of the attacker.  Toward the end of the surveillance period, Detective

Case No.: 5:11-CV-03999-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR PARTIAL
SUMMARY JUDGMENT

United States District Court
For the Northern District of California

Henderson was informed that a team of officers would be arriving soon to conduct a probation search of the premises, looking for Justine.  *Id.* at 45:14-21.  When the officers arrived, Detective Henderson and Detective Shimada were assigned to move to the adjoining street, where they would watch the back of the house.  *Id.* at 51:16-52:7.

Several officers, including Officer Rojas and Sergeant Hill, went to the door of the 940 unit, where the door was open, but the metal security screen was closed.  *See* Hill Depo. at 52:7-12; Smith Depo. at 88:19-20.  Plaintiff has testified that when she answered the door, the man she found was holding a battering ram, and that though he did not identify himself, she recognized that he was a police officer.  *See* Smith Decl. at ¶ 5.  The officers spoke to Plaintiff.   Defendants contend that they informed Plaintiff that they were there to conduct a probation search.  *See* Hill Depo. at 54:20-24.  Plaintiff claims that she was told only that they were looking for Justine, and that they needed to search the house – not that this was a probation search.  *See* Smith Depo. at 89:14-90:14.

The parties agree that Plaintiff did not allow them entry, and that Defendant Rojas then removed Plaintiff from the doorway and placed her in handcuffs, to allow the officers to enter and search the house.  Hill Depo. at 56:10-15.  According to Plaintiff, Plaintiff asked Defendant Rojas to close the security screen to avoid scaring her eight-year-old granddaughter, A.S., and at this point Defendant Rojas "lifted [her] off the ground and pulled [her] out of [the] house.  After pulling [her] outside, he pushed [her] into a fence.  He twisted [her] arms behind [her] back."  *Id.* at ¶ 7.  Plaintiff further testified that when she indicated to Defendant Rojas that she was not under arrest, he said "You are now," and handcuffed her.  *Id.* at ¶ 8; Smith Depo. at 96:21.  Defendant Rojas disputes this description of the encounter.  Rojas Depo. at 56:2-57:23.  Another officer then waited with her outside the house while Defendant Rojas and other officers searched the house.  A total of six officers entered the 940 unit.  *See* Defendants' Response to Special Interrogatory No. 6, Rose Decl. Exh. L.

The officers did not find anyone else in the house, though they did find that the garage contained a bed, female clothing, a desk, and a phone bill addressed to Justine at that address.  The

Case No.: 5:11-CV-03999-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR PARTIAL
SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1  officers then asked Plaintiff to let them into the 942 unit, but she explained that the unit was rented

2  out to tenants, and that Justine did not live there.  Hill Depo. at 69:14-18; Smith Decl. at ¶ 11.  The

3  officers insisted on searching the unit, and obtained the keys from Plaintiff, who showed officers

4  where to find them in a drawer in the 940 unit.  The officers then entered the 942 unit, where they

5  found no sign of Justine.  Most of the officers then left the scene.  Detective Henderson then

6  returned to Gale Drive from his position behind the house, spoke to Plaintiff, and removed the

7  handcuffs.  He also briefly went inside the 940 unit.

8       The remaining officers, including Detective Henderson, then spoke to Plaintiff further.

9  They asked her some questions about Justine, but Plaintiff indicated that she did not know where to

10 find Justine.  Plaintiff has testified that after the officers left, she felt pain in her arms, and has

11 submitted photographic evidence of bruises on both arms.  *See* Smith Depo. at 18:19-23:4; Exh. H

12 to the Decl. of Brandon Rose (photographs).

13 **II.**     **LEGAL STANDARD**

14      Under Federal Rule of Civil Procedure 56(a), "the court shall grant summary judgment if

15 the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

16 to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those that may affect the

17 outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as

18 to a material fact is "genuine" if the evidence is such that "a reasonable jury could return a verdict

19 for the nonmoving party."  *See id*.  "[I]n ruling on a motion for summary judgment, the judge must

20 view the evidence presented through the prism of the substantive evidentiary burden."  *Id*. at 254.

21 The question is "whether a jury could reasonably find either that the [moving party] proved his

22 case by the quality and quantity of evidence required by the governing law or that he did not."  *Id*.

23 "[A]ll justifiable inferences must be drawn in [the nonmovant's] favor."  *See United Steelworkers*

24 *of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (citing *Liberty*

25 *Lobby*, 477 U.S. at 255).

26      The moving party bears the initial responsibility for informing the district court of the basis

27 for its motion and identifying those portions of the pleadings, depositions, interrogatory answers,

28

Case No.: 5:11-CV-03999-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR PARTIAL
SUMMARY JUDGMENT

1    admissions and affidavits, if any, that it contends demonstrate the absence of a genuine issue of

2    material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A party opposing a properly

3    supported motion for summary judgment "may not rest upon the mere allegations or denials of

4    [that] party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for

5    trial."  *See* Fed. R. Civ. P. 56(e); *see also Liberty Lobby*, 477 U.S. at 250.  The opposing party need

6    not show the issue will be resolved conclusively in its favor.  *See Liberty Lobby*, 477 U.S. at 248–

7    49.  All that is necessary is submission of sufficient evidence to create a material factual dispute,

8    thereby requiring a jury or judge to resolve the parties' differing versions at trial.  *See id.*

9           The moving party bears the initial burden of identifying those portions of the pleadings,

10   discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex*

11   *Corp.*, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial,

12   it must affirmatively demonstrate that no reasonable trier of fact could find other than for the

13   moving party, but on an issue for which the opposing party will have the burden of proof at trial,

14   the party moving for summary judgment need only point out "that there is an absence of evidence

15   to support the nonmoving party's case."  *Id.* at 325; *accord Soremekun v. Thrifty Payless, Inc.*, 509

16   F.3d 978, 984 (9th Cir. 2007).  Once the moving party meets its initial burden, the nonmoving

17   party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that

18   there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 250.

19   **III.     DISCUSSION**

20          A plaintiff asserting a claim under § 1983 must demonstrate that (1) the action occurred

21   "under color of state law," and (2) the action resulted in the deprivation of a constitutional or

22   federal statutory right.  *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988) (internal citations

23   omitted); 42 U.S.C. § 1983 (2006) (Section 1983 imposes civil liability on any person who, under

24   color of state law, "subjects or causes to be subjected, any citizen of the United States or other

25   person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

26   secured by the Constitution and laws.").  The parties do not dispute that the officers were acting

27   under color of state law.  They dispute only whether Defendants violated Plaintiffs' Fourth

28

Case No.: 5:11-CV-03999-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR PARTIAL
SUMMARY JUDGMENT

1    Amendment rights by (1) searching Ms. Smith's home, and (2) detaining Ms. Smith during the

2    search.  Because Plaintiff bears the burden of proof at trial on her § 1983 claims, Defendants, as the

3    moving party, bear the initial burden on summary judgment of pointing out "an absence of

4    evidence to support [Plaintiffs'] case."  *Celotex Corp.*, 477 U.S. at 325.

5           Sergeant Hill and Detective Henderson also argue that they should be granted summary

6    judgment on Plaintiff's § 1983 claims because they are entitled to qualified immunity.  The

7    doctrine of qualified immunity protects government officials "from liability for civil damages

8    insofar as their conduct does not violate clearly established statutory or constitutional rights of

9    which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)

10   (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Because qualified immunity is an

11   immunity from suit, rather than a defense to liability, it is effectively lost if a case is erroneously

12   permitted to go to trial.  *Id.*  For this reason, the Supreme Court has stressed the importance of

13   resolving immunity questions at the earliest possible stage in litigation.  *Id.*  Therefore, if, drawing

14   all reasonable inferences in favor of the nonmoving party, it is clear as a matter of law that the

15   defendants are entitled to qualified immunity, summary judgment should be granted.  *See*

16   *Wilkinson v. Torres*, 610 F.3d 546, 548 (9th Cir. 2010) (reversing denial of summary judgment

17   where defendants were entitled to qualified immunity as a matter of law).  Where a defendant's

18   entitlement to qualified immunity turns on genuinely disputed issues of fact, however, summary

19   judgment is not appropriate.  *See Espinosa v. City and County of San Francisco*, 598 F.3d 528, 532

20   (9th Cir. 2010) (affirming denial of summary judgment because there were genuine issues of fact

21   regarding whether officers violated plaintiff's Fourth Amendment rights and whether those rights

22   were clearly established); *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) ("If a genuine

23   issue of material fact exists that prevents a determination of qualified immunity at summary

24   judgment, the case must proceed to trial.").

25          In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a two-part approach

26   for analyzing qualified immunity.  The analysis contains both a constitutional inquiry and an

27   immunity inquiry.  *Johnson v. County of Los Angeles*, 340 F.3d 787, 791 (9th Cir. 2003).  The

28

United States District Court
For the Northern District of California

8

Case No.: 5:11-CV-03999-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR PARTIAL
SUMMARY JUDGMENT

1    constitutional inquiry requires the court to determine this threshold question: "Taken in the light

2    most favorable to the party asserting the injury, do the facts alleged show the officer's conduct

3    violated a constitutional right?" *Saucier*, 533 U.S. at 201.  If the Court determines that a

4    constitutional violation could be made out based on the parties' submissions, the second step is to

5    determine whether the right was clearly established.  *Id.*  "The relevant, dispositive inquiry in

6    determining whether a right is clearly established is whether it would be clear to a reasonable

7    officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

8           The Supreme Court recently held that the *sequence* of analysis set forth in *Saucier* is not

9    mandatory and that a court may exercise its sound discretion in determining which of the two

10   prongs of the qualified immunity analysis to address first.  *Pearson*, 129 555 U.S. at 241-42.  Thus,

11   in some cases, it may be unnecessary to reach the ultimate constitutional question when officers

12   would be entitled to qualified immunity in an event, a result consistent with longstanding principles

13   of judicial restraint.

14                **A.  Detective Henderson**

15          Detective Henderson argues that he has no liability on any of Plaintiff's claims because he

16   did not participate in the search that gave rise to all of Plaintiff's claims.  Plaintiff claims that

17   Detective Henderson did participate, and that even if he did not actually search the house, that he

18   can be liable under the "integral participant" doctrine.

19          The evidence as to whether Detective Henderson actually participated in a search of

20   Plaintiff's property is equivocal.  The evidence shows that Detective Henderson was assigned

21   primarily to surveillance during the incident and spent much of the time parked on the street behind

22   the house.  *See* Henderson Depo. at 30:10-12.  Detective Henderson also testified that he did not

23   search either the 940 or 942 unit.  *See id*. at 59:23-25 ("Q:  Did you go in and search any of these

24   addresses? A:  No.").  Detective Henderson did, however, testify that he "walked into the living

25   room" of the 940 unit after some of the other officers had left.  *Id.* at 60:3.  Moreover, in

26   Defendants' response to Plaintiffs' request for admission, Defendants specifically admitted that

27   Detective Henderson searched the 940 unit.  Rose Decl. Exh. M at No. 33.  Even if Detective

28

9

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Henderson entered the unit only after most of the officers had left the scene, there remains a

2    question as to whether his entry could be considered part of the search.  Though the question is

3    close, the Court finds, that, given the conflicting nature of the evidence concerning the precise

4    nature and level of Detective Henderson's participation in the incident, there remains a genuine

5    issue of material fact as to Detective Henderson's liability.  Accordingly, Defendants' motion for

6    summary judgment that Detective Henderson has no liability because he did not participate in the

7    incident is DENIED.  However, the fact that Detective Henderson may have participated in the

8    search does not automatically defeat his motion for summary judgment as to the search and

9    seizure-related claims on which the other defendants have moved.  Rather, Detective Henderson

10   may still establish that he is entitled to summary judgment on the search and seizure claims, along

11   with the other defendants.  Moreover, Detective Henderson may yet prove at trial that he did not

12   actually participate in any search.

13                    **B.  The Search**

14           Detective Henderson and Sergeant Hill move for summary judgment that their search of the

15   duplex was reasonable, and that even if it was not, they are entitled to qualified immunity because

16   any law rendering the search unreasonable was not clearly established.  Defendants present two

17   reasons why the search was reasonable: (1) that it was a probation search for which consent had

18   previously been given as a condition of Justine's probation; and (2) that it was legal as a protective

19   sweep pursuant to *Maryland v. Buie*, 494 U.S. 325 (1990).  Because the Court finds that it was not

20   clearly established at the time of the search that the officers' conduct was unconstitutional, the

21   Court need not consider the second prong of the qualified immunity analysis, concerning whether

22   the search was actually permissible under the Fourth Amendment.  In this case, the Court, mindful

23   of the Supreme Court's guidance in *Pearson* 555 U.S. 223, finds that addressing the underlying

24   Constitutional question that would have no effect on the outcome here would not be a wise use of

25   judicial resources.  Resolving the question would entail analysis of a number of complicated issues

26   not clearly presented or briefed, as noted below, and would thus consume precious judicial

27   resources while not providing a good opportunity to advance Fourth Amendment law.

28

10

**United States District Court**
For the Northern District of California

1    Probationers may consent to future searches as a condition of probation.  There is no

2    dispute here that Justine had given such consent as a condition of her probation.  Plaintiff

3    articulates two arguements for why this consent did not render the search of Plaintiff's home

4    reasonable: (1) that police did not have probable cause to believe that Justine lived there; and (2)

5    that even if Justine did live there, Plaintiff's explicit refusal of consent trumped Justine's consent to

6    the search.

7    In order to search a house without a warrant in conjunction with a search condition, officers

8    must have a probable cause to believe that the target of the search actually lives at the address to be

9    searched.[4]  *See Motley v. Parks,* 432 F.3d 1072, 1080 (9th Cir. 2005).  Plaintiff argues that the

10   officers did not have probable cause because none of the officers actually spoke to Justine's

11   probation officer, and because the documents the officers relied on did not contain "some indicia of

12   reliability."  Opp'n at 7.  The Court finds that, whether or not the search was reasonable as a matter

13   of law, the officers were reasonable to believe that the documents they had were sufficient to

14   constitute probable cause that Justine lived at the duplex.  The officers had documents from three

15   separate sources (probation, the CJIC, and the DMV), all of which indicated that the 940 and 942

16   Gale Drive addresses were Justine's address.  None of the documents contained any other address

17   for Justine within the last ten years.  *Portnoy v. City of Davis*, the case Plaintiff cites wherein a

18   court in a different district found an absence of probable cause, is inapposite.  In that case, the

19   police had only the say-so over the phone of someone at the probation department that the target

20   lived at the address they intended to search.  *Portnoy*, 663 F. Supp.2 d 949, 954.  Additionally, in

21   *Portnoy,* there was some confusion about the actual correct house number, the target was actually

_____

[4] Much of the law in this area developed in the context of parole searches, not probation searches.
Though the Ninth Circuit has recently made clear that the two contexts can entail different analyses
under the Fourth Amendment, *see United States v King*, 687 F.3d 1189 (9th Cir. 2012), at the time
of the incident – in October, 2010 – the Ninth Circuit had treated the two contexts interchangeably.
*See Motley v. Parks*, 432 F.3d 1072, 1083 n.9 (9th Cir 2005) ("We have consistently recognized
that there is no constitutional difference between probation and parole for purposes of the fourth
amendment." (internal quotation and citations omitted).  Thus, for purposes of the qualified
immunity analysis, law concerning a parole search is relevant to what the officers would
reasonably have believed was permissible.

Case No.: 5:11-CV-03999-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR PARTIAL
SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    in custody at the time, and the people living at the address were unrelated to the target, and had

2    been living there nearly a year – in other words, there were several red flags that should have

3    alerted the police that they had the wrong address.  *Id.*  This case is markedly different.  The police

4    had documents from three separate sources, all listing the Gale Drive duplex as Justine's address.

5    The reports listing the address were generated that same morning, and at least one of them had

6    been specifically updated to verify the Gale Drive address only a few months before.  The police

7    knew that Justine was not in custody, because a witness had reported seeing her participate in a

8    violent crime just that morning.  In the absence of any other address for Justine, it cannot be said

9    that it was clearly established that the largely consistent information the officers had was not

10   sufficient to constitute probable cause.  Accordingly, the officers are entitled to qualified immunity

11   on the issue of whether the search was legal.[5]

12          Regarding Plaintiff's refusal to consent to the search, it is true that by the time of the

13   incident in 2010, the Supreme Court had decided *Georgia v. Randolph*, 547 U.S. 103 (2006),

14   which established that where two residents are both present and one consents while the other

15   objects to the search, the objection trumps the consent.  However, it was not clear at the time – and

16   indeed, is still unclear – whether this rule applies to a probation search.  Indeed, Courts have

17   explained again and again that probation and parole are special situations with needs that differ

18   from other types of situations.  *See, e.g.*, *Griffin v. Wisconsin*, 483 U.S. 868, 873-74 (1987) ("A

19   State's operation of a probation system, like its operation of a school, government office or prison,

20   or its supervision of a regulated industry, likewise presents 'special needs' beyond normal law

21   enforcement.").  Thus, officers would be reasonable to believe that a rule that applies to searches

22   generally does not apply the same way to probation searches.  At the very least, the *Randolph* rule

23   is in tension with the rule allowing probation searches on a finding of probable cause that the target

---

[5] Plaintiff makes much of her previous encounters with the San Jose and Santa Clara police departments concerning previous searches for Justine, in which she had told officers that Justine did not live with her.  However, there is no evidence that these officers knew of those previous encounters.  Because the qualified immunity analysis "shield[s] an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law," *Pearson*, 555 U.S. at 245, Plaintiff's previous experiences that were unknown to these officers do not bear on the question of whether these officers behaved reasonably at the time of the October 7, 2010 incident.

12

United States District Court
For the Northern District of California

1   lives at the address.  It was thus not clearly established that Plaintiff's refusal could or should

2   trump the consent included as a condition of Justine's probation.  Because it was not clearly

3   established that the *Randolph* rule would apply in such a situation, the officers are immune from

4   suit on this issue.

5   Though under *Saucier* and *Pearson* this Court has the authority to decide the underlying

6   constitutional question, the Court does not think this is the appropriate time to do so.  In particular,

7   the law concerning probation and parole appears to be in flux in the Ninth Circuit, *see United*

8   *States v. King*, 687 F.3d 1189 (9th Cir. 2012), and this case, with its issues of consent and

9   allegations of excessive force, does not present an especially good opportunity to develop that law.

10   Moreover, the parties have not addressed this distinction in their briefing.  Accordingly, the Court

11   declines to resolve the underlying constitutional question of whether the Fourth Amendment

12   permits a probation search where another resident of the house is present and objects.

13   Plaintiff additionally alleges that even if the officers were entitled to conduct a search, they

14   were not entitled to search the entire property, but rather, were obligated to ask Plaintiff to which

15   parts of the property Justine had access.  However, Plaintiff cites no authority that would clearly

16   establish such a requirement.  Plaintiff relies primarily on *U.S. v. Davis*, 932 F.2d 752 (9th Cir.

17   1991).  In *Davis*, the police searched a locked safe found in an apartment shared by a probationer

18   and a roommate.  The Ninth Circuit held that the police had not exceeded the scope of a

19   permissible probation search when they searched the safe without a reasonable suspicion that it

20   belonged to the probationer, and not the roommate.  *Id.* at 758-59.  The Ninth Circuit in *Davis*

21   rejected a rule imposing on officers a general duty to inquire as to ownership or control of an object

22   to be searched.  *See id.* at 760.  Given the holding that there is no general duty to inquire, the Court

23   finds that there was no clearly established law rendering the officers' search of the entire duplex

24   unreasonable.

25   Finally, Plaintiff alleges that Defendants violated the knock-notice rule, a judicially created

26   Fourth Amendment-based rule that officers must announce their identity and purpose before they

27   can forcibly enter a dwelling.  *See Richards v. Wisconsin,* 520 U.S. 385 (1997).  California also has

28

Case No.: 5:11-CV-03999-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR PARTIAL
SUMMARY JUDGMENT

a knock-notice statute, though Plaintiff has not specifically alleged violation of the California statute.  As an initial matter, Plaintiff did not plead violation of this knock-notice rule as grounds for any of her five causes of action rooted in § 1983.  But even if the claim were properly brought, Plaintiff has not established that the officers' conduct violated clearly established law, even fully accepting Plaintiff's version of the facts.  Plaintiff admits that she recognized the officers as police officers, and that they told her they were looking for Justine and intended to search the house for Justine.  *See* Smith Decl. at ¶¶ 5-6.  Moreover, Plaintiff testified at deposition that she knew Justine was placed on probation in 2009.  Smith Depo. at 89:13-17.  This Court is aware of no precedent requiring certain "magic words" to satisfy the knock-notice requirement.  Because it was apparent to Plaintiff that the officers were police officers; that they were looking for Justine, who was on probation; and that they intended to search the house, the officers would have been fully reasonable to believe that their notice obligations had been discharged.  They are thus entitled to qualified immunity for any violation of the knock-notice rule that could inhere in their conduct.

Having found that the officers were reasonable to believe that their search was legal as a probation search, the Court need not reach the question of whether the search was also justified as a protective sweep.  In conclusion, Defendants' motion for summary judgment is GRANTED on grounds of qualified immunity as to Sergeant Hill and Detective Henderson's liability for the search.

### C.   The Detention

Plaintiff also claims that she was wrongly arrested, in violation of her Fourth Amendment rights.  Defendants claim that they can have no liability and are entitled to qualified immunity because they legally detained Plaintiff incident to a lawful search.

It is clearly established that officers may detain an individual, and may even use handcuffs to do so,[6] to allow the completion of a lawful search.  *See Muehler v. Mena*, 544 U.S. 93, 99 (2005) (upholding the handcuffing and detention of occupants during the search of a home and noting that

---

[6] The Court does not find that the use of handcuffs was necessarily reasonable in this case.  Rather, the Court notes only that the mere fact that handcuffs were used does not transform what would otherwise be a detention incident to search into an arrest.  Plaintiff may still argue at trial that the use of handcuffs in this case constituted excessive force.

14

**United States District Court**
For the Northern District of California

1    "[a]n officer's authority to detain incident to a search is categorical."); *Michigan v. Summers*, 452

2    U.S. 692 (1981) (valid search warrant conveys the authority to detain occupants during the search).

3    Moreover, the Ninth Circuit has explicitly held that it is lawful for officers to detain the occupants

4    of a house, including family members of a probationer who used that address, while they conduct a

5    lawful probation search.  *See Sanchez v. Canales*, 574 F.3d 1169 (2009).  Although *Sanchez* has

6    now been called into question because it relies, in part, on the now-overruled proposition that there

7    is no difference between a parole search and a probation search, *see King*, 687 F.3d at 1189,

8    *Sanchez* was clearly good law at the time of the incident, in October, 2010.  The officers were thus

9    entitled to rely on it.  As explained above, the officers were reasonable to believe that their

10   probation search was lawful.  Accordingly, to the extent that Plaintiff's claim is based on her being

11   detained at all while the officers searched her house, the officers are clearly entitled to summary

12   judgment on grounds of qualified immunity.[7]  Thus, Sergeant Hill and Detective Henderson's

13   motion for summary judgment on Plaintiff's § 1983 claims based on illegal detention is

14   GRANTED on grounds of qualified immunity.

15           The Court need not decide the complicated and now unsettled question of whether, after

16   *King*, a detention incident to a probation search, as opposed a parole search, remains lawful.  There

17   are many potentially significant ramifications of a decision regarding the differences between

18   parole and probation searches, and as explained above, this case presents several complications that

19   counsel against addressing the issue, unbriefed by the parties, at this time.

20           The only remaining question concerns the manner in which Plaintiff was detained.  *See*

21   *Dawson v. City of Seattle*, 435 F.3d 1054, 1066 (9th Cir. 2006) ("We interpret the Supreme Court's

22   language to mean that the duration of a detention may be coextensive with the period of a search,

23

24   _____

[7] Plaintiff argues extensively that she was arrested, rather than detained.  However, all of the cases
Plaintiff cites in addressing this distinction involve *Terry* stops, and whether a detention made in
the context of an investigatory stop in some public place rose to the level of an arrest.  *See* Opp'n at
14-15.  Plaintiff was not stopped somewhere out in public for investigatory purposes, but rather
restrained at her own home while the officers executed what they reasonably believed to be a
lawful probation search.  Because Courts have explicitly recognized the type of detention that
occurred here as a lawful type of detention as distinct from the brief investigatory detention
commonly referred to as a *Terry* stop, the Court does not find it necessary to analyze whether, had
the detention occurred under different circumstances, it might have been considered an arrest.

Case No.: 5:11-CV-03999-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR PARTIAL
SUMMARY JUDGMENT

1    and require no further justification.  The police do not, however, have unfettered authority to detain

2    a building's occupants in any way they see fit.  *Muehler* confirms an officer's authority to detain a

3    building's occupants during a search so long as the officer conducts the detention in a reasonable

4    manner.") (internal citation omitted).  However, questions about the manner, rather than the fact, of

5    detention concern not the question of illegal detention itself, but rather of excessive force.

6    Defendants have not moved for summary judgment on Plaintiff's excessive force claims.  Thus, the

7    Court will not consider the force and manner used in restraining Plaintiff during what, under

8    *Muehler* and *Sanchez*, was an authorized detention incident to search.  The question of excessive

9    force in the detention of Plaintiff remains a question for trial.  To the extent that Defendants intend

10   to move for summary judgment on questions concerning the manner of detention, the motion is

11   DENIED.

12         **D.  *Monell* Liability**

13         In order to establish that the City or Police Department is liable for a constitutional

14   violation, Plaintiff must show that a policy, custom, or practice of the City or Police Department

15   was the "moving force" behind any such alleged constitutional injury.  *Monell v. Dep't of Soc.*

16   *Servs. of City of New York*, 436 U.S. 658, 694 (1978); *accord Dougherty v. City of Covina*, 654

17   F.3d 892, 900 (9th Cir. 2011).  The Ninth Circuit has made clear that "'liability for improper

18   custom may not be predicated on isolated or sporadic incidents.'"  *Hunter v. Cnty. of Sacramento*,

19   652 F.3d 1225, 1233 (9th Cir. 2011) (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)

20   (internal quotation marks and citations omitted)).  Rather, to hold a government entity liable under

21   § 1983, a plaintiff must show that the alleged unconstitutional act results from "(1) an employee

22   acting pursuant to an expressly adopted official policy; (2) an employee acting pursuant to a

23   longstanding practice or custom; or (3) an employee acting as a 'final policymaker.'" [8]  *Delia v.*

24   *City of Rialto*, 621 F.3d 1069, 1081-82 (9th Cir. 2010) (quoting *Webb v. Sloan*, 330 F.3d 1158,

25   1164 (9th Cir. 2003)).

26

27   ────────────────
     [8] There has been no allegation that the officers here were acting as "final policymakers."  Thus, the

28   Court will not address this potential basis for *Monell* liability.

Case No.: 5:11-CV-03999-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR PARTIAL
SUMMARY JUDGMENT

Here, Plaintiff's *Monell* claim fails.  Because the Court has found in favor of Defendants on grounds of qualified immunity, the Court has not ruled, as Defendants suggest, that there was no constitutional violation here.  However, Plaintiff has provided no evidence that there is an official policy or custom of performing warrantless searches with no legal justification, or of detaining people during searches of their homes where not authorized by law.  Indeed, Plaintiff presented evidence that the City and Police Department have *no* expressly adopted official policy on probation searches.  *See* Winter Depo. at 37:18-22 ("In my search of the manual, I did not specifically find a section specifically relate to probation searches.").  Moreover, Plaintiff has not produced evidence of any questionable searches or detentions other than the October 7, 2010 incident that forms the basis of this lawsuit.  Without evidence of any other incident, the Court cannot find that there is a longstanding practice or custom.  As Plaintiff has not put forward any evidence of either an official policy or a longstanding practice or custom, Plaintiff cannot establish that the city or police department is liable.

Moreover, to establish *Monell* liability on a theory of failure to train, a Plaintiff must show not only that training was inadequate, but that the city was deliberately indifferent to the constitutional rights of citizens.  *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  The fact that further training might have prevented any violation is insufficient.  *See id.* at 392.  Here, Plaintiff has not shown that the City and Police Department inadequately trained officers or had any policy of doing so, nor that the City or Police Department was deliberately indifferent. Plaintiff has presented evidence that the City and Police Department do not have a specific written policy on probation searches, and that the Police Department does have a practice of detaining people who interfere with lawful probation searches.  *See* Winter Depo. at 37:20-22; 39:10-12; 62:20-25.  But Plaintiff simply has not presented any evidence at all about the training that officers receive, on the topic of searches or any other subject.  Under *City of Canton*, "the question [is] whether such inadequate training can justifiably be said to represent 'city policy.'" 489 U.S. at 390. Here, Plaintiff has not even shown that the City or Police Department inadequately trains its

17

1   officers, let alone that it has a conscious policy of doing so.  Accordingly, Plaintiff cannot establish

2   *Monell* liability on a failure to train theory.

3       Plaintiff has therefore failed to create a genuine issue of material fact as to any element of

4   their § 1983 claim against the City or Police Department.[9]  Defendants' motion for partial

5   summary judgment with respect to the *Monell* claim against the City and Police Department for

6   Plaintiffs' search and detention is therefore GRANTED.

7                        **E.  State Law Immunities**

8       Sergeant Hill and Detective Henderson[10] have moved for summary judgment on Plaintiff's

9   state law claims (sixth through fifteenth causes of action).  This motion is based on three types of

10  statutory immunity for public employees or police officers: (1) discretionary immunity; (2)

11  enforcement or execution of laws; and (3) penal code immunity.

12      Discretionary immunity is afforded by Cal. Gov. Code § 820.2, which provides: "Except as

13  otherwise provided by statute, a public employee is not liable for an injury resulting from his act or

14  omission where the act or omission was the result of the exercise of the discretion vested in him,

15  whether or not such discretion be abused."  California law is clear that this statute requires "judicial

16  abstention in areas in which the responsibility for basic policy decisions has been committed to

17  coordinate branches of government."  *Johnson v. State*, 69 Cal. 2d 782, 793 (1968).

18      Plaintiff contends that the officers' actions here were "operational," and thus not considered an

19  exercise of discretion.  The Court agrees.  A California Court of Appeal has clearly held that

20  officers' actions taken in attempting to carry out their assigned duties are not covered by this type

21  of immunity.  *See  Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1051, 55 Cal. Rptr. 3d

22  158, 174 (2007) ("The decision to arrest Gillan was not a basic policy decision, but only an

23

24  [9] Regarding Plaintiff's remaining claims – the state law claims in the sixth through fifteenth causes of action – Defendants have not made any argument for summary judgment for the City or the

25  Police Department.  Rather, Defendants argue only that there is no municipal liability for Plaintiff's § 1983 claims.  Though the state law claims are all listed in the First Amended Complaint as being

26  brought against all defendants, it is not clear whether Plaintiff intends to assert these claims against the City and the Police Department, and if so, on what theory.  Accordingly, the Court makes no

27  ruling as to the City or Police Department's liability on state law claims at this time.
    [10] As explained above, the motion filed by Defendants does not appear to include a motion by the

28  City or Police Department on the state law claims.

                                        18

United States District Court
For the Northern District of California

1    operational decision by the police purporting to apply the law.  The immunity provided by

2    Government Code section 820.2 therefore does not apply.").  The Ninth Circuit, citing *Gillan*, has

3    also held that "the immunity provided by California Government Code § 820.2 does not apply to

4    claims of false imprisonment or false arrest predicated on an officer's detaining a suspect without

5    reasonable suspicion or probable cause."  *Liberal v. Estrada*, 632 F.3d 1064, 1085 (9th Cir. 2011).

6    Thus, § 820.2 clearly provides no protection from Plaintiff's claims as they relate to the detention.

7    Moreover, the decision to search, like the decision to arrest, is not a "basic policy decision" of type

8    this statute is designed to protect, and courts have declined to apply discretionary immunity to

9    decisions involving surveillance, explaining that "[r]outine discretionary decisions as part of a

10   person's normal job duties are not covered by this immunity."  *Trujillo v. City of Ontario,* 428 F.

11   Supp. 2d 1094, 1123 (C.D. Cal. 2006) *aff'd sub nom. Bernhard v. City of Ontario,* 270 F. App'x

12   518 (9th Cir. 2008).  The same reasoning applies to Plaintiff's search-related claims.  The officers

13   were not making policy in searching Plaintiff's house, but rather acting in accordance with existing

14   policy permitting probation searches.  Accordingly, the Court finds that the officers are not

15   immune under § 820.2 from Plaintiff's state law claims as they concern search and detention.

16        Immunity for the enforcement and execution of laws is provided by Cal. Gov. Code § 820.4,

17   which provides: "A public employee is not liable for his act or omission, exercising due care, in the

18   execution or enforcement of any law.  Nothing in this section exonerates a public employee from

19   liability for false arrest or false imprisonment."  Sergeant Hill and Detective Henderson assert that

20   this immunity protects them from Plaintiff's eighth through fifteen causes of action (and not from

21   the sixth and seventh, Plaintiff's Bane Act claims).  However, as this statue explicitly does not

22   provide immunity for claims of false arrest, the Court finds that it can also provide no protection

23   from Plaintiff's ninth cause of action, "False Arrest/False Imprisonment."  Accordingly, the Court

24   will consider its application only as to Plaintiff's eighth and tenth through fifteenth causes of

25   action.

26        Section 820.4 provides immunity for officers whose actions are "objectively reasonable."  *See*

27   *Reynolds v. County of San Diego*, 858 F. Supp. 1064, 1074 (S.D. Cal. 1994).  Thus, for this

28

Case No.: 5:11-CV-03999-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR PARTIAL
SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1 immunity to apply, the Court would have to find that there is no genuine issue of material fact as to

2 the objective reasonableness of the officers' actions.  This is a different question from the federal

3 law-based qualified immunity analysis above, concerning whether the officers' actions were

4 unlawful under clearly established law, and is also distinct from the ultimate constitutional question

5 of whether the officers' actions comported with the Fourth Amendment.  Rather, it involves a very

6 fact-specific balancing of what would have been "objectively reasonable" under the circumstances

7 as a matter of California law.  Here, there are several factual disputes about what exactly occurred.

8 Specifically, there are disputes about both the behavior of Plaintiff and how, precisely, the officers

9 responded.  The resolution of these factual disputes will have a bearing on the objective

10 reasonableness of the officers' behavior.  Accordingly, the Court finds that there is a genuine issue

11 of material fact as to the reasonableness of the officers' actions, and the Court cannot grant

12 summary judgment that the officers are immune under § 820.4.  As neither § 820.2 nor § 820.4

13 provides immunity, Sergeant Hill and Detective Henderson's motion for summary judgment is

14 DENIED as to Plaintiff's eighth and tenth through fifteenth causes of action.

15      The third type of immunity Sergeant Hill and Detective Henderson claim is under California

16 Penal Code § 847, which states: "There shall be no civil liability on the part of, and no cause of

17 action shall arise against, any peace officer. . . acting within the scope of his or her authority, for

18 false arrest or false imprisonment. . . [if] [t]he arrest was lawful, or the peace officer, at the time of

19 the arrest, had reasonable cause to believe the arrest was lawful."  The Court has already found that

20 the officers were reasonable to believe that their detention of Plaintiff was lawful.[11]  Thus, the

21 officers' detention of Plaintiff cannot give rise to liability under California law.  Accordingly,

22 Sergeant Hill and Detective Henderson's motion for summary judgment is GRANTED as to

23 Plaintiff's ninth cause of action, Plaintiff's state law claim for False Arrest/False Imprisonment.

24      Finally, Defendants contend that they are entitled to summary judgment on Plaintiff's sixth and

25 seventh causes of action, under California Civil Code §§ 52.1 and 52.3, both of which are part of a

26 
───────────────────────

[11] The cases discussing § 847 do not specifically address claims of detention not classified as
27 arrests.  However, because § 847 provides immunity from false arrest or false imprisonment
claims, it does not appear intended to allow such claims where the officers effectuated a lawful
28 detention, even if it did not rise to the level of an arrest.

20

law known as the Bane Act.  The Bane Act, as relevant here, provides a cause of action for

interference with an individual's exercise of his or her rights under the state and federal

constitutions by means of threats, intimidation, or coercion.  *See* Cal. Civ. Code § 52.1.

Defendants provide two bases for summary judgment: (1) that Plaintiff's claims require that the

City and/or officers have interfered with Plaintiff's constitutional rights, which Defendants contend

Plaintiff has not established; and (2) that the same immunities apply to these claims as to Plaintiff's

other state law claims.

Regarding immunities, the only immunity the Court has found to apply at this stage governs, by

its terms, only claims for false arrest, and is thus inapplicable to Plaintiff's Bane Act claims, which

allege not false arrest, but interference with rights by means of threats, intimidation, or coercion.

Thus, Defendants have not established any statutory immunity for these claims.

Regarding interference with constitutional rights, the rights that must be interfered with to

establish a Bane Act violation can be under either the United States or the California Constitutions.

*See* Cal. Civ. Code §§ 52.1, 52.3.  Plaintiff has alleged interference with rights under both.  *See*

First Amended Complaint, ECF No. 42, at ¶¶ 63 ("Defendants' conduct alleged herein interfered

with, or constituted an attempt to interfere with, plaintiffs' rights under the First, Fourth, Fifth and

Fourteenth Amendments to the United States Constitution, and article I, sections 1, 2, 7, and 13 of

the California Constitution"), 67 ("Plaintiffs are informed and believe, and thereon allege, that the

acts of defendants alleged herein were done pursuant to a pattern and practice of depriving persons

of rights, privileges, and immunities secured by the laws and Constitution of the State of

California, and the laws and Constitution of the United States.").  Defendants' arguments, however,

concern only the Fourth Amendment to the United States Constitution, and do not address

Plaintiff's allegations concerning the California Constitution.  As the movants, Defendants bear the

burden of demonstrating an absence of evidence in the record to establish Plaintiff's claims.  *See*

*Celotex*, 477 U.S. at 323.  The only basis Defendants have provided, however, is their existing

arguments about the reasonableness of the search and detention under the Fourth Amendment to

the United States Constitution.  Defendants have not even attempted to demonstrate a lack of

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   evidence for Plaintiff's claims arising under the California Constitution.  Thus, Defendants have

2   not met their burden to show an absence of evidence supporting Bane Act liability.  Accordingly,

3   Defendants' motion for summary judgment as to Plaintiff's sixth and seventh claims for relief are

4   DENIED.

5      **IV. DEFENDANT ROJAS**

6        Defendant Rojas separately moves for summary judgment.  Defendant Rojas moved by filing a

7   joinder in Defendants' motion.  Thus, like the first Defendants' motion, Defendant Rojas's motion

8   is directed only to the search and detention claims, *not* to the claims of excessive force.  To the

9   extent that Officer Rojas's motion is grounded in his entitlement to qualified immunity based on

10  the lack of clearly established law rendering it illegal to search Plaintiff's house or to detain

11  Plaintiff during that search, Officer Rojas's motion is GRANTED for the reasons explained above.

12       Defendant Rojas's memorandum of points and authorities, however, also puts forth an

13  argument for summary judgment that Defendant Rojas did not use excessive force.  *See* ECF No.

14  64 at 7.  These arguments are not properly before the Court, as the motion in which Defendant

15  Rojas has joined specifically disclaims any argument that summary judgment should be granted on

16  excessive force claims.  However, even if the Court were to entertain Defendant Rojas's argument,

17  the Court could not grant summary judgment on the excessive force claim.  The excessive force

18  inquiry requires a "careful balancing" of interests in a very fact-specific examination of each

19  "particular situation."  *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989).  As explained in this

20  case, there are several disputed facts concerning what Plaintiff did and said when the officers

21  approached, and what the officers, including Defendant Rojas, did and said in return.  The required

22  balancing inquiry will depend on the resolution of these factual disputes.  Accordingly, to the

23  extent that Defendant Rojas intends to move for summary judgment on the question of excessive

24  force, his motion is DENIED.

25  **V.     CONCLUSION**

26       For the reasons explained above, Detective Henderson's motion for summary judgment as

27  to all claims due to lack of involvment is DENIED.  Detective Henderson and Sergeant Hill's

28

Case No.: 5:11-CV-03999-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR PARTIAL
SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1 motion for summary judgment and Defendant Rojas's motion for summary judgment on Plaintiff's

2 first, second, fourth, and fifth claims under 42 U.S.C. § 1983 are GRANTED on grounds of

3 qualified immunity insofar as the claims allege illegal search and detention only.  Detective

4 Henderson and Sergeant Hill's motion for summary judgment and Defendant Rojas's summary

5 judgment on Plaintiff's sixth and seventh causes of action under the Bane Act are DENIED.

6 Detective Henderson and Sergeant Hill's motion for summary judgment and Defendant Rojas's

7 motion for summary judgment on Plaintiff's eighth and tenth through fifteenth causes of action for

8 state law violations are DENIED.  Detective Henderson and Sergeant Hill's motion for summary

9 judgment and Defendant Rojas's motion for summary judgment on Plaintiff's ninth cause of action

10 for state law false arrest/false imprisonment are GRANTED on grounds of immunity under Cal.

11 Penal Code § 847.

12       The City of Santa Clara and Santa Clara Police Department's motion for summary

13 judgment on Plaintiff's claims under 42 U.S.C. § 1983 is GRANTED.  To the extent that the City

14 and Police Department intend to move for summary judgment on Plaintiff's state law claims, they

15 have presented no argument, and accordingly, the motion is DENIED.

16       To the extent that Defendant Rojas intends to move for summary judgment on Plaintiff's

17 claims regarding excessive force, his motion is DENIED.

18 **IT IS SO ORDERED.**

19 Dated: January 15, 2013

20 LUCY H. KOH
United States District Judge

23